<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

_____

                              :

WINGATE INNS, INT'L, INC.,      :

                              :

        Plaintiff,           :

                              :         Civil Action No. 07-5014 (JAG)

            v.             :

                              :             **OPINION**

HIGHTECH INN.COM, LLC;       :

ENGINEERING DESIGN CORP.;   :

SHANTU SHAH; and BAKULESH   :

PATEL,                        :

                              :

        Defendants.        :

_____:

<u>GREENAWAY, JR., U.S.D.J.</u>

        This matter comes before this Court on the motion for judgment on the pleadings to dismiss counterclaim plaintiff Shantu Shah's ("Mr. Shah") Counterclaim, by counterclaim defendant Wingate Inns International, Inc. ("Wingate"),[1] pursuant to FED. R. CIV. P. 12(c).  For the reasons set forth below, this motion will be granted as to the only count of the Counterclaim of Mr. Shah.

_____

    [1]  It is ordered, pursuant to application by Dennis A. Durkin, counsel for defendants HighTech Inn.com, Bakulesh G. Patel, and third party defendant Raju Patel, that HighTech Inn.com, Bakulesh G. Patel, and Raju Patel hereby join in this motion by Wingate for judgment on the pleadings.  Although Mr. Shah has twice sent the same letter in opposition, (Docket Entry Nos. 81, 88), this Court finds Mr. Shah's cursory procedural argument to be without merit.

# I. <u>BACKGROUND</u>

## A.  <u>The Parties</u>

Wingate, the successor-in-interest to Hotel franchising Limited Partnership d/b/a Wingate Inns, L.P., is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  (Compl. ¶ 1.)

Shah is a citizen of the State of Oregon, residing at 6637 Southwest 88th Place, Portland, Oregon.  (Compl. ¶ 7.)  Shah was the sole shareholder of defendant Engineering Design Corporation ("EDC"), (Compl. Ex. A, Schedule B), a corporation organized under the laws of the State of Oregon, with its principal place of business at 5150 Southwest Griffin Drive, Beaverton, Oregon.  (Compl. ¶ 6.)  Mr. Shah and his wife, Vasantia Shah, were also the two sole members of EDC Development, LLC ("EDC Development").  (Compl. Ex. H, Schedule B.)

Bakulesh Patel, also referred to as Buggsi Patel ("Mr. Patel"), defendant and cross-claim defendant, is a citizen of the State of Oregon, residing at 2630 Southwest 17th Place, Redmond, Oregon.  (Compl. ¶ 5.)  Mr. Patel was the sole member of Winhill.  (Compl. ¶ 4, Ex. H, Schedule B.)

HighTech Inn.com, LLC ("HighTech"), defendant and cross-claim defendant, is a limited liability company in which EDC Development (Mr. and Mrs. Shah's company) held 81% interest, and Winhill (Mr. Patel's company) held 19% interest.  (Compl. Ex. H, Schedule B.)  HighTech is organized under the laws of the State of Oregon, with its principal place of business at 5900 Northeast Ray Circle, Hillsboro, Oregon.  (Compl. ¶ 2.)  However, by 2005, Winhill (Mr. Patel's company) owned 100% of HighTech.  (Counterclaim ¶¶ 6-7.)

**B.  The Franchise Agreement and Development Advance Notes**

On or about September 13, 1996, Wingate entered into a franchise agreement (the "Franchise Agreement") with EDC (controlled by Mr. Shah), for the construction and operation of a 100-room Wingate guest lodging facility to be located at State Highway 99 at Hadley Street, Sherwood, Oregon, Site No. 9853-21427-1 (the "Facility"), for a twenty-year term.  (Compl. ¶¶ 13, 14, and Ex. A.)  In connection with entering into the Franchise Agreement, EDC and Mr. Shah executed a Development Advance Note (the "First Note") in the amount of $250,000.00. (Compl. ¶ 21 and Ex. B.)  Wingate and EDC subsequently amended the Franchise Agreement (see Compl., Exs. C-F), and, later, EDC and Mr. Shah executed a second Development Advance Note (the "Second Note") in the amount of $105,000.00.  (Compl. ¶ 28 and Ex. G.)  In the event that a balance remained due under the First or Second Notes, upon termination of the Franchise Agreement, EDC and Mr. Shah were obligated to pay the outstanding principal sum immediately to Wingate.  (Compl. ¶¶ 22, 29 and Exs. B, G.)

**C.  Assignment and Assumption Agreement**

In 2000, EDC, HighTech, and Wingate entered into an assignment and assumption agreement (the "Assignment Agreement"), pursuant to which HighTech assumed all of EDC's obligations under the Franchise Agreement.[2]  (Compl. ¶ 31 and Ex. H.)  At the time of the Assignment Agreement, HighTech was co-owned by EDC Development and Winhill (Mr. Patel's company).  (Compl. ¶¶ 33, 34 and Exs. I, J.)  Wingate alleges that under the Assignment

---

[2]  On or about January 12, 2000, Mr. Shah and Mr. Patel also entered into an agreement for the management of the Facility (the "Management Agreement").  (Counterclaim ¶ 5 and Ex. A1.)  Pursuant to the Management Agreement, Mr. Shah and Mr. Patel agreed that third party defendant Buggsi Hospitality Group, L.L.C. ("BHG") would manage the Facility.  (Counterclaim Ex. A1, § 1.4.)

Agreement, EDC remained secondarily liable for the payment and performance of the Franchise

Agreement.  (Compl. ¶ 32 and Ex. H.)  Mr. Shah and Mr. Patel, each owning a share in

HighTech, provided Wingate with a Guaranty of HighTech's obligations under the Franchise

Agreement.  (Compl. ¶¶ 33, 34 and Exs. I, J.)  In or around 2004 or 2005, Winhill claimed a

100% interest in HighTech, and EDC Development (Mr. Shah's company) no longer had any

interest in HighTech. (Counterclaim ¶¶ 6, 7.)

**D.  Management Agreement**

On or about January 12, 2000, Mr. Shah and Mr. Patel entered into an agreement for the

management of the Facility (the "Management Agreement").  (Counterclaim ¶ 5 and Ex. A1).

Mr. Shah and Mr. Patel agreed that third-party defendant Buggsi Hospitality Group, LLC

("BHG") would manage the Facility.  (Id.)  Defendant Raju Patel ("Raju Patel"), brother-in-law

of Mr. Patel, was the Chief Financial Officer of BHG.  (Counterclaim ¶ 6.)

**E.  Post-Termination Settlement Agreement**

On or about October 19, 2006, Wingate entered into a post-termination settlement

agreement ("Post-Termination Settlement Agreement ") with HighTech and Mr. Patel, pursuant

to which, among other things, the parties agreed that the Franchise Agreement and all ancillary

agreements terminated effective October 17, 2006.  (Compl. ¶¶ 37, 38 and Ex. K.)  Wingate

alleges that HighTech and Mr. Patel acknowledged that they owed certain amounts to Wingate

under the Franchise Agreement and the First and Second Notes (Compl. Ex. K §§ 1-3).  Despite

their obligation, and Wingate's demand for payment, Wingate alleges that HighTech and Mr.

Patel failed to pay to Wingate the amounts specified in the Post-Termination Settlement

Agreement.  (Compl. ¶¶ 44, 63.)

At the time the parties entered into the Post-Termination Settlement Agreement, neither EDC Development nor Mr. Shah had any interest in HighTech.  Mr. Shah was not a party, directly or indirectly, to the Post-Termination Settlement Agreement.  Also, the Post-Termination Settlement Agreement did not impose any obligations on EDC Development or Mr. Shah. (Compl. Ex. K.)

**F.  Federal Action**

Wingate filed a complaint seeking to recover amounts due and owing under the Post-Termination Settlement Agreement.  (Docket Entry No. 1.)  Wingate included alternative claims against Mr. Shah, who Wingate alleged was secondarily liable for the payment of $227,290.98 in liquidated damages or actual damages and $213,333.33 due under the First and Second Notes.  (Compl. ¶¶ 90-97.)

Mr. Shah filed an answer and asserted counterclaims against Wingate, alleging that Wingate and other defendants violated RICO, the New Jersey RICO Act, the Oregon RICO Act, 18 U.S.C. § 1951, and 18 U.S.C. § 666.  He also asserted that Wingate breached a fiduciary duty to Mr. Shah.  (See Counterclaim.)  Mr. Shah's claims are centered around his allegation that the defendants, including Wingate, "conspired . . . to make an agreement to terminate [the Franchise Agreement]" and thereby "creating liquidated damages."  (Counterclaim ¶ 3.)  He also claims that there was "constructive fraud" committed against him to "extort" the loan guarantees on the outstanding Development Advance Notes.[3]  (Id.)

---

[3]  Mr. Shah files letters incessantly before this Court.  Each is, at best, mistaken, and, at worst, a wholly meritless nuisance filing.

A few letters are relevant here.  His letter seeking to strike and reject Wingate's reply brief is denied.  (Docket Entry No. 85 (letter to strike))  Mr. Shah's argument in this letter is without any basis.  He states that the reply was filed more than seven days after notice of his

## II.  JURISDICTION AND VENUE

This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332.  The parties to this action are of diverse citizenship and the amount in controversy exceeds $75,000.  Venue is proper, pursuant to 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

Wingate has moved for a motion for judgment on the pleadings, pursuant to Rule 12(c), on the basis of a failure to state a claim (Plaintiff Wingate Inns International, Inc.'s Br. in Support of Mot. for J. on the Pleadings Dismissing the Counterclaim ("Wingate's Br.") at 6-7), a defense which Wingate presented in its answer to Shah's counterclaim (Wingate Inns International, Inc.'s Reply to Counterclaim of Shantu Shah at 3 (first affirmative defense)).  Rule 12(h)(2) provides that a party may raise a failure to state a claim upon which relief can be granted on a motion for judgment on the pleadings.  See Turbe v. Govn't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  "When a Rule 12(c) motion alleges a plaintiff's failure to sate a claim upon which relief can be granted as here, [the court] analyze[s] the motion under the same

---

opposition, which he asserts was served on the parties on May 26, 2009.  It is noted that Mr. Shah has not filed a certificate of service to that effect.  The only relevant facts documented in the docket are that Shah filed the opposition on May 29, 2009 (Docket Entry No. 82), and Wingate filed a reply within seven days (Docket Entry No. 83 (Reply filed June 4, 2009, certificate of service)).

    His letter seeking to file a sur-reply on this motion is granted (Docket Entry No. 86), and this Court has considered the sur-reply he has attached to that letter.  The argument Mr. Shah presents in his sur-reply is no more persuasive than his other arguments.  The sur-reply contains only a series of paragraphs reciting the procedural history of his case, commenting on alleged procedural errors by Wingate—none of which are true—and a cursory statement urging this Court to strike Wingate's motion.

    This Court notes that this discussion also disposes of Mr. Shah's most recent letter (Docket Entry No. 89), seeking a decision on his request to strike Wingate's reply, to file a sur-reply, and to deny certain defendants' joining of this motion (see discussion supra note 1).

standard as a Rule 12(b)(6) motion to dismiss." <u>Ober v. Brown</u>, 105 F. App'x 345, 346 (3d Cir. 2004) (citing <u>Turbe</u>, 938 F.2d at 428) (affirming dismissal of case on Rule 12(c) motion alleging failure to state a claim); <u>Fullman v. Pennsylvania Dept. of Corrections</u>, 365 F. App'x 44, 45 (3d Cir. 2008) (same).  That is, the court "view[s] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party."[4]  <u>Fullman</u>, 365 F. App'x at 46.

## IV.  <u>ANALYSIS</u>

Mr. Shah asserts several causes of action in his counterclaims against Wingate, arising under: (a) 18 U.S.C. 1962 ("RICO"), Or. Rev. Stat. § 166.720 ("ORICO"), and N.J. Stat. Ann. § 2C:41-2 ("NJ RICO"); (b) 18 U.S.C. 1951 ("Hobbs Act"); (c) 18 U.S.C. 666 ("Theft or Bribery Involving Federal Funds"); and (d) common law breach of fiduciary duty.[5]  Each claim is fatally flawed and legally deficient.

### A.  <u>State and Federal RICO</u>

#### 1.  **Federal RICO**

Mr. Shah alleges that Wingate is liable under 18 U.S.C. § 1962(c) (substantive RICO claim) and 18 U.S.C. § 1962(d) (conspiracy to commit a violation under § 1962).

---

[4] This Court notes that it has recited the bulk of the factual background from Wingate's Complaint.  Mr. Shah's Counterclaim offers but few facts.  This Court has reviewed Shah's numerous filings in this matter and has found no factual dispute with regard to those facts cited above.

[5] This Court construes Mr. Shah's Notice of Motion to Strike, and Brief in Support of Motion to Strike (Docket Entry No. 82), filed twenty-one days after Wingate's instant motion, as a brief in opposition to the motion.  Federal Rule of Civil Procedure 12(f) is not appropriately used to strike an entire motion.  <u>See</u> Fed. R. Civ. P. 12(f).  Wingate has also construed Mr. Shah's filing as a brief in opposition, and filed its reply brief within the following week.  (Docket Entry No. 83).

In order to state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

Mr. Shah cannot sustain his RICO claim, as alleged. Racketeering activity is defined as "any act or threat involving" specified state law crimes, or any "act" indictable under various specified federal statutes, and certain federal offenses. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232 (1989); 18 U.S.C. § 1961 (defining "racketeering activity" through exhaustive list of state and federal offenses). To establish a pattern of racketeering, Mr. Shah must allege at least two predicate acts of racketeering that are related and continuous. See H.J. Inc., 492 U.S. at 229.

Contrary to Mr. Shah's allegations (Counterclaim ¶ 4), neither the Post-Termination Settlement Agreement nor Wingate's complaint before this Court constitute racketeering activity. There are no facts that suggest that the Post-Termination Settlement Agreement between Wingate and HighTech is itself a crime or evidence of a crime. Mr. Shah assigned to Hightech all of EDC's rights and obligations under the Franchise Agreement with Wingate. Although he had a stake in HighTech at the time of the assignment, Mr. Patel later came to have full ownership of HighTech. There is no evidence or allegation that after the assignment to a company in which Mr. Shah had no stake, Wingate and HighTech were obligated to include Mr. Shah in their negotiations ending the Franchise Agreement.

The complaint filed by Wingate is also not evidence of a crime. Mr. Shah presents, and this Court sees, no precedent that suggests that the filing of a single lawsuit can constitute criminal activity.

Mr. Shah also makes vague allegations about Wingate and other defendants conspiring to commit or committing "mail and wire fraud." (Counterclaim ¶¶ 4, 6.) Federal mail fraud and federal wire fraud may constitute predicate acts of racketeering. See 18 U.S.C. § 1961(1) (listing 18 U.S.C. § 1341 (federal mail fraud), 18 U.S.C. § 1343 (federal wire fraud)); Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004). The Third Circuit has held that federal mail and wire fraud allegations under RICO must be pled with particularity, in accordance with the Federal Rules of Civil Procedure:

> Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.

Lum, 361 F.3d at 223-24 (internal citations omitted).

Mr. Shah does not offer any detail about the alleged mail and wire fraud. Plainly, his fraud claims cannot stand, as alleged, as predicates for his RICO claims. Mr. Shah's § 1962(c) claim fails. "Without a predicate act [plaintiff] cannot possibly succeed on its federal and state RICO claims." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 747 (3d Cir. 1996).

Mr. Shah also fails to allege a conspiracy under 18 U.S.C. § 1962(d). Section 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection[s] (a), (b) or (c) of this section." 18 U.S.C. § 1962(d). Mr. Shah's claim of

conspiracy to violate 18 U.S.C. § 1962(c) must be dismissed because he has failed to state a claim under 18 U.S.C. § 1962(c).  He has not stated a claim alleging predicate acts constituting a pattern of racketeering activity.  "Any claim under section 1962(d) based on a conspiracy to violate other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."  Lightning Lube v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).

Mr. Shah has failed to state a federal RICO claim under 18 U.S.C. § 1962(c)-(d).

**2.  ORICO & NJ RICO**

Mr. Shah brings a state law RICO claim under Or. Rev. Stat. § 166.720, and seeks treble damages under Or. Rev. Stat. § 166.725(7).  He also brings a state law claim under the New Jersey RICO, N.J. Stat. Ann. § 2C:41-2, and seeks treble damages under N.J. Stat. Ann. § 2C:41-4.[6]  Both of these statutes are modeled after federal RICO and the prohibited activities require a "pattern of racketeering activity."  See Or. Rev. Stat. § 166.720; Penuel v. Titan/Value Equities Group, Inc., 127 Or. App. 195, 204 (Or. Ct. App. 1994) ("ORICO is patterned after the federal RICO, and federal court decisions are useful guidance in interpreting ORICO."); N.J. Stat. Ann. § 2C:41-2; State v. Ball, 141 N.J. 142, 156 (1995) (noting general similarity between Federal and NJ RICO); id. at 163-64 (noting similarity in requirement of "pattern of racketeering activity").

As discussed in the context of Mr. Shah's federal RICO claim, Mr. Shah fails to state a RICO claim under either Oregon or New Jersey.  He, once again, fails to allege acts which constitute racketeering activity.  Also, as was true with his federal RICO claim, to the extent that

---

[6]  Mr. Shah references 18 U.S.C. § 2C:41-3, however, this provision relates to criminal, not civil, penalties.  (Counterclaim at 8.)  The appropriate provision is 18 U.S.C. §2C:41-4.

10

Mr. Shah relies on Wingate's Post-Termination Settlement Agreement and Complaint as mail

and wire fraud, he fails to plead with particularity, as required by Rule 9(b).  See FED. R. CIV. P.

9(b).  Therefore, with regard to ORICO and NJ RICO, Mr. Shah has failed to state a claim upon

which relief can be granted.

## B.  18 U.S.C. § 1951 (Hobbs Act)

The Hobbs Act is a criminal statute concerning the interference with commerce by threats

of violence.  See 18 U.S.C. § 1951.

Mr. Shah's claim against Wingate under 18 U.S.C. § 1951 is barred because Mr. Shah

lacks standing as a private citizen to prosecute a federal criminal charge.  "[I]n American

jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another."  Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); see also Maine

v. Taylor, 477 U.S. 131, 136-37 (1986) ("[T]he United States and its attorneys have the sole

power to prosecute criminal cases in the federal courts."); Barrett v. City of Allentown, 152

F.R.D. 50, 55-56 (E.D. Pa. 1993) (dismissing 18 U.S.C. § 1951 because no private cause of action

exists).  Therefore, Mr. Shah's § 1951 fails to state a claim upon which relief may be granted.

## C.  18 U.S.C. § 666 (Theft or Bribery Concerning Programs Receiving Federal Funds)

Section 666 of Title 18 is a criminal statute that involves theft or bribery concerning

programs receiving federal funds.  See 18 U.S.C. § 666.

Mr. Shah alleges that Wingate violated 18 U.S.C. § 666.  This claim fails because Mr.

Shah lacks standing to prosecute criminal charges.  As noted above, Mr. Shah may not bring a

criminal action as a private citizen.  See Taylor, 477 U.S. at 136-37; Whitmire v. U.S. Veterans

Admin., 661 F. Supp. 720, 723 (W.D. Wash. 1986) (dismissing § 666 claim because no private

cause of action exists).  Mr. Shah's claim fails, as with the § 1951 claim, for lack of standing.

**D.  Breach of Fiduciary Duty**

Mr. Shah fails to allege any facts to support his breach of fiduciary duty claim.  Indeed, he makes nothing more than a conclusory allegation that Wingate (amongst others) "breached fiduciary duty."  (Counterclaim ¶¶ 3, 6.)  Such unwarranted legal conclusions are insufficient to withstand a motion to dismiss.

There are no facts here that would support a finding of a fiduciary duty between Wingate and himself or between Wingate and EDC.[7]  "The essence of a fiduciary relationship is that one party places trust and confidence in another . . . [it] arises between two persons when one person is under a duty to act for or give advice for the benefits of another on matters within the scope of their relationship."  F.G. v. MacDonnell, 150 N.J. 550, 563 (1997).  There is no indication in the record that Mr. Shah or his company had a relationship beyond an ordinary commercial transaction based in contract.  The Franchise Agreement here does not give rise to any special relationship that could give rise to a fiduciary duty.  See, e.g., New Jersey Econ. Dev. Auth. v. Pavonia Rest., 319 N.J. Super. 435, 446 (N.J. Super Ct. App. Div. 1998) ("[A]s a general proposition, creditor-debtor relationships rarely give rise to a fiduciary duty inasmuch as their respective positions are essentially adversarial."); Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 451-52 (N.J. Super. Ct. App. Div. 1976) ("[P]laintiffs' grievance is founded . . . on the breach of contract between the parties—a contract which creates no special relationship or duty beyond that arising out of any commercial transaction").

_____

[7]    Mr. Shah was not a party to the Franchise Agreement or the Assignment Agreement—in both contracts, EDC was the relevant party.

Even if a fiduciary duty were to exist, Mr. Shah fails to allege any facts that could constitute a "breach" of a fiduciary duty. As noted above, Mr. Shah was no longer a party to any contracts with Wingate.  Wingate and other parties were not obligated to inform him of the termination of their agreements.  The fact that Mr. Shah remained, under contract, secondarily liable for loan guarantees to Wingate does not support a breach of fiduciary duty.

Because the facts here cannot support a breach of fiduciary claim, Mr. Shah's claim fails.

**E.  Futility of Leave to Amend**

"[The Third Circuit has] held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).  An amendment is futile if the amended complaint cannot withstand a renewed motion to dismiss.  See Shane, 213 F.3d at 115.

In this case, Mr. Shah has asserted numerous claims that are fatally flawed and could not be cured with an amendment.  With one singular exception, regarding a subset of Mr. Shah's RICO claim, there are no facts that could support Mr. Shah's causes of action.  As a private citizen, Mr. Shah's 18 U.S.C. § 1951 and 18 U.S.C. § 666 claims fail for lack of standing.  Mr. Shah's breach of fiduciary duty fails because there are no facts that support the existence of a duty or a breach of that duty.  Mr. Shah's RICO claims also fail to the extent that he names as his predicate acts a legal complaint and a settlement agreement because those two documents do not constitute racketeering acts.  Each of these claims are dismissed with prejudice.

This Court will allow Mr. Shah to seek leave to amend to the extent that he wishes to

amend his RICO claims based on mail and wire fraud.  As noted, his *pro se* complaint made only

cursory, vague allegations about fraud.  Mr. Shah must comply with Federal Rule of Civil

Procedure 9(b) for pleading, with particularity, if he wishes to pursue this claim.  As noted, this

requires Mr. Shah to plead the date, place, or time of alleged fraud, or otherwise "inject[]

precision and some measure of substantiation" into his allegations.  <u>Lum</u>, 361 F.3d at 224.

## V. <u>CONCLUSION</u>

For the reasons set forth above, this Court grants Wingate's motion, and dismisses,

without prejudice, Mr. Shah's Counterclaim to the extent that he alleges claims for mail and wire

fraud, and dismisses, with prejudice, the remaining causes of action for failure to state a claim

upon which relief can be granted.[8]


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date:   December 29, 2009

-------------------

[8]  This Court notes that Wingate has stated it will dismiss its pending claims against Mr. Shah and EDC in the event that this Court grants Wingate's motion.  (Wingate's Br. at 5 n.1.)

In a letter dated June 11, 2009, HighTech, Mr. Patel, and Raju Patel submit that this case would be ripe for transfer in the event that this motion is granted.  (Docket Entry No. 87.)  Transfer of venue is permissible pursuant to 28 U.S.C. § 1404(a).  If these parties wish to move to transfer, they should proceed according to the Federal Rules of Civil Procedure and corollary Local Rules of Civil Procedure.  This Court will address a formal motion on the issue, if made, and to the extent that the parties request that their correspondence be deemed a motion to transfer, this request is denied.